IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ASHLEY ANDERS and GARRETT ANDERS, on behalf of themselves and all similarly situated employees,<br><br>    Plaintiffs,<br><br>v.<br><br>ANIMAX DESIGNS, INC. and CHARLES W. FAWCETT, III,<br><br>    Defendants. | Case No. _____<br><br>JURY DEMAND<br><br>COLLECTIVE ACTION |

## COLLECTIVE-ACTION COMPLAINT

For their Collective-Action Complaint ("Complaint") under the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201–19, against Defendants Animax Designs, Inc. ("Animax") and Charles W. Fawcett, III ("Fawcett") (collectively "Defendants"), Plaintiffs Ashley Anders ("Mrs. Anders") and Garrett Anders ("Mr. Anders") (collectively, "Plaintiffs") state as follows:

### INTRODUCTION

1. Plaintiffs file this collective action, on behalf of themselves and all other similarly situated employees, to remedy Defendants' violations of the FLSA.

2. Defendants violated the FLSA by misclassifying Plaintiffs and other employees as exempt from receiving overtime compensation when Plaintiffs and other similarly situated employees were nonexempt employees entitled to overtime compensation.

3. This collective action seeks to recover unpaid overtime compensation for Plaintiffs, as well as for all similarly situated current and former salaried employees who worked for Defendants during the 3 years before the filing of this Complaint ("Putative Class").

4. Plaintiffs also seek to recover damages for Defendants' terminations of their employment in retaliation for activities protected by the FLSA under 29 U.S.C. § 215(a)(3).

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, because Plaintiffs' claims arise under the laws of the United States, namely the FLSA.

6. This Court has personal jurisdiction over Animax; it does business in this District.

7. This Court has personal jurisdiction over Fawcett; he resides in this District.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to this action occurred within this District, and Defendants do business in this District.

## PARTIES

9. Mrs. Anders is an individual; she resides in Middletown, Ohio. Plaintiffs attach her written consent to join this action as Exhibit 1. *See* 29 U.S.C. § 216(b).

10. Mr. Anders is an individual; he resides in Middletown, Ohio. Plaintiffs attach his written consent to join this action as Exhibit 2. *See id.*

11. Mr. Anders and Mrs. Anders are a married couple; they were married to each other at all relevant times.

12. Animax is a for-profit corporation, organized under the laws of Tennessee and registered to do business in Tennessee.

13. Animax's registered agent for service of process is Charles W. Fawcett, III; he may be served at 101 Fernco Dr., Nashville, TN 37207.

14. Fawcett is an individual; he resides in Nashville, Tennessee.

15. Fawcett is the founder and Chief Executive Officer of Animax.

16.   Fawcett supervises all Animax's employees, including Plaintiffs and the Putative Class.

17.   Animax is a private company whose profits benefit Fawcett.

18.   At all relevant times, Mrs. Anders was an employee of Animax under the FLSA. 29 U.S.C. § 203(e)(1).

19.   At all relevant times, Mrs. Anders was an employee of Fawcett under the FLSA. *Id.*

20.   At all relevant times, Mr. Anders was an employee of Animax under the FLSA. *Id.*

21.   At all relevant times, Mr. Anders was an employee of Fawcett under the FLSA. *Id.*

22.   At all relevant times, Animax was Mrs. Anders's employer under the FLSA. *Id.* § 203(d).

23.   At all relevant times, Fawcett was Mrs. Anders's employer under the FLSA. *Id.*

24.   At all relevant times, Animax was Mr. Anders's employer under the FLSA. *Id.*

25.   At all relevant times, Fawcett was Mr. Anders's employer under the FLSA. *Id.*

26.   At all relevant times, Animax was and is an enterprise engaged in commerce or in the production of goods for commerce under the FLSA; it had employees engaged in commerce or in the production of goods for commerce, namely the animatronic statues that Animax manufactures for its customers. *Id.* § 203(s)(1)(A)(i).

27.   Animax's annual gross volume of business exceeds $500,000. *Id.* § 203(s)(1)(A)(ii).

## FACTS

28.   Animax manufactures, among other items, animatronic figures of cartoon characters for use in places such as theme parks.

3

29. Animax's customers provide detailed specifications for Animax to produce animatronic figures.

30. Animax manufactures animatronic figures to its customers' detailed specifications.

31. Manufacturing animatronic figures is not a recognized field of artistic or creative endeavor.

32. Mrs. Anders worked for Animax as Lead Casting Technician from March 2016 until November 2018.

33. Mrs. Anders, and other similarly situated employees, regularly worked more than 40 hours per workweek.

34. Mrs. Anders, and other similarly situated employees, often worked 60 hours per workweek or more.

35. Defendants knew that Mrs. Anders, and other similarly situated employees, regularly worked more than 40 hours per workweek.

36. Defendants purported to pay Mrs. Anders, and other similarly situated employees, a salary.

37. Defendants did not pay Mrs. Anders, or other similarly situated employees, overtime compensation for hours worked over 40 in a workweek at 1.5 times their regular rates of pay.

38. Defendants misclassified Mrs. Anders, and other similarly situated employees, as creative professionals exempt from overtime compensation under the FLSA.

39. The primary duty of Mrs. Anders's role as Lead Casting Technician did not involve performance of work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

40. Defendants therefore misclassified Mrs. Anders as being exempt from overtime.

41. Mr. Anders also worked for Animax in an untitled role from October 2012 until November 2018.

42. Mr. Anders, and other similarly situated employees, regularly worked more than 40 hours per workweek.

43. Mr. Anders, and other similarly situated employees, often worked 60 hours per workweek or more.

44. Defendants knew that Mr. Anders, and other similarly situated employees, regularly worked more than 40 hours per workweek.

45. Defendants purported to pay Mr. Anders a salary.

46. Defendants did not pay Mr. Anders, or other similarly situated employees, overtime compensation for hours worked over 40 in a workweek at 1.5 times their regular rates of pay.

47. Defendants misclassified Mr. Anders, and other similarly situated employees, as creative professionals exempt from overtime compensation under the FLSA.

48. The primary duty of Mr. Anders's role did not involve performance of work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

49. Defendants therefore misclassified Mr. Anders as being exempt from overtime.

50. All Animax's employees regularly work over 40 hours per workweek.

51. Defendants know that their employees regularly work more than 40 hours per workweek.

52. At all times relevant to this Complaint, Animax classified all its workers as exempt creative professionals and paid them all salaries without an overtime premium for hours over 40 in a workweek.

53. The primary duties of Animax's workers do not involve performance of work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

54. Plaintiffs and other similarly situated employees were all subject to Animax's uniform policies and practices that deprived them of overtime compensation.

55. Animax's workers who are classified as exempt creative professionals are similarly situated to Plaintiffs; they are misclassified as creative professionals when they should receive overtime compensation as nonexempt employees under the FLSA.

56. The Putative Class of similarly situated workers is: **All salaried employees who worked for Animax at any time during the 3 years prior to the filing of this Complaint**.

57. The Putative Class is readily identifiable in Defendants' business records.

58. The misclassification caused Plaintiffs and the Putative Class damages, namely unpaid overtime compensation, liquidated damages, and attorneys' fees and costs.

59. In or around October 2018, two of Plaintiffs' former coworkers informed Animax that they intended to sue Animax for violations of the FLSA.

60. Members of Animax management called Mrs. Anders into a meeting in or around October 2018 to question her about what she knew about the anticipated FLSA lawsuit.

61. Members of Animax management threatened to fire Mrs. Anders if she did not tell them everything that she knew about her coworkers' anticipated lawsuit.

62. During that conversation, Mrs. Anders informed members of Animax management that she opposed Animax forcing its employees to work overtime without paying them proper overtime compensation.

63. Animax fired the two former employees it anticipated would file an FLSA lawsuit the day after Mrs. Anders's conversation with Animax management.

64. Approximately one month later, Animax fired Mrs. Anders.

65. Animax gave as the reasons for Mrs. Anders's termination "dereliction of duty" and "insubordination."

66. Prior to her termination, Mrs. Anders had never received any discipline while working at Animax.

67. Prior to her termination, Mrs. Anders's supervisors had consistently praised her performance at work.

68. Animax's stated reasons for firing Mrs. Anders were pretext for unlawful retaliation for FLSA–protected activity.

69. Animax's retaliatory termination caused Mrs. Anders damages, including back pay, front pay, and attorneys' fees and costs.

70. On the same day that Animax fired Mrs. Anders, Animax also fired Mr. Anders.

71. On several occasions, including at least once in or around October 2018 or November 2018, Mr. Anders spoke to his supervisor about Animax requiring its employees to work overtime without proper compensation.

72. Specifically, Mr. Anders told his supervisor that it was illegal for Animax to fire or to threaten to fire its employees for refusing to work overtime hours without compensation.

73. In response to this statement, Mr. Anders's supervisor told Mr. Anders that the supervisor intended to make his employees work 20-hour days as punishment for complaining about not receiving proper overtime compensation.

74. Approximately 2 weeks after Mr. Anders's conversation with his supervisor objecting to working overtime without being properly compensated, Animax terminated Mr. Anders's employment.

75. Animax gave as the reason for Mr. Anders's termination "dereliction of duty."

76. Prior to his termination, Mr. Anders had never received any discipline related to his performance of his job duties at Animax.

77. Prior to his termination, Mr. Anders's supervisors had consistently praised his performance at work.

78. Animax's stated reason for firing Mr. Anders was a pretext for unlawful retaliation for Mr. Anders's FLSA–protected activity

79. Animax's stated reason for firing Mr. Anders was also a pretext for unlawful retaliation for Mr. Anders's association with Mrs. Anders, who also engaged in FLSA–protected activity.

80. Animax's retaliatory termination caused Mr. Anders damages, including back pay, front pay, and attorneys' fees and costs.

## COUNT I
## Failure to Pay Overtime
## 29 U.S.C. § 207

81. Plaintiffs incorporate by reference all prior allegations in this Complaint.

82. Plaintiffs the Putative Class are non-exempt employees entitled to be paid overtime compensation at 1.5 times their regular hourly rates of pay for all hours worked over 40 in a

workweek.

83. Animax employed Plaintiffs and the Putative Class for workweeks longer than 40 hours and failed to compensate them for all the time worked in excess of 40 hours per week, at a rate of at least 1.5 times their regular hourly rate.

84. Animax's violations of the FLSA were willful.

85. Animax's willful FLSA violations extend the statute of limitations from two years to three years.

86. Animax has failed to make a good-faith effort to comply with the FLSA regarding payment of overtime compensation to Plaintiffs and the Putative Class.

87. As a result of Animax's violations of the FLSA, Plaintiffs and the Putative Class suffered and continue to suffer damages, namely failing to receive overtime compensation earned during their employment.

88. In addition to unpaid overtime compensation, Animax owes Plaintiffs and the Putative Class liquidated damages in an amount equal to their unpaid overtime.

89. Plaintiffs and the Putative Class are entitled to recovery of their attorneys' fees and costs.

## COUNT II
### FLSA Retaliation (on behalf of Mrs. Anders and Mr. Anders only)
### 29 U.S.C. § 215(a)(3)

90. Plaintiffs incorporate by reference all prior allegations in this Complaint.

91. Mrs. Anders engaged in FLSA–protected activities, including among other things, complaining to members of Animax management about not being paid overtime for regularly working more than 40 hours per workweek and supporting the anticipated FLSA lawsuit of other employees.

92. Animax at all relevant times knew that Mrs. Anders had engaged in FLSA–protected activities.

93. Animax took adverse actions against Mrs. Anders by terminating her employment after learning that she had engaged in FLSA–protected activities.

94. There is a causal connection between Mrs. Anders's FLSA–protected activities and the adverse employment actions that Animax took against her.

95. Animax's retaliation caused Mrs. Anders damages, including compensatory damages, back pay, front pay, interest, costs, punitive damages, and attorneys' fees.

96. Mr. Anders engaged in FLSA–protected activities, including among other things, complaining to his supervisor that it was illegal for Animax to fire or to threaten to fire its employees for refusing to work overtime hours without proper compensation.

97. Animax at all relevant times knew that Mr. Anders had engaged in FLSA–protected activities.

98. Animax took adverse actions against Mr. Anders by terminating his employment after learning that he had engaged in FLSA–protected activities.

99. There is a causal connection between Mr. Anders's FLSA–protected activities and the adverse employment actions that Animax took against him.

100. Animax took adverse actions against Mr. Anders by termination his employment based on his association with Mrs. Anders after learning that Mrs. Anders had engaged in FLSA–protected activities.

101. There is a causal connection between Mrs. Anders's FLSA–protected activities and the adverse employment actions that Animax took against Mr. Anders.

102. Animax's retaliatory conduct warrants imposition of punitive damages.

103. Animax's retaliation caused Mr. Anders damages, including compensatory damages, back pay, front pay, interest, costs, punitive damages, and attorneys' fees.

## JURY DEMAND

Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs pray for the following relief from this Court:

A. Issuing process against Defendants and requiring them to answer within the period provided by law;

B. Requiring Defendants to provide Plaintiffs the names, addresses, phone numbers, and email addresses for the Putative Class;

C. Permitting Plaintiffs to issue notice of this collective action to the Putative Class;

D. Giving the Putative Class members the opportunity to join this collective action by filing written consents;

E. Awarding damages to Plaintiffs in the amount of their unpaid overtime compensation, plus an equal amount of liquidated damages;

F. Awarding damages to all Putative Class members who join this collective action in the amount of their unpaid overtime compensation, plus an equal amount of liquidated damages;

G. Requiring Defendants to pay all attorneys' fees Plaintiffs and the Putative Class incur to bring and to maintain this collective action;

H. Awarding Plaintiffs back pay, front pay, interest, and costs resulting from Defendants' illegal retaliation;

I. Awarding Plaintiffs punitive damages for Defendants' illegal retaliation;

J. Requiring Defendants to pay the costs and expenses of this action;

K. Requiring Defendants to pay pre-judgment and post-judgment interest as provided by law; and

L. Granting Plaintiffs and the Putative Class such other, further, and general relief to which they may be entitled.

Date: May 14, 2020

Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (TN BPR # 018965)
/s/ *N. Chase Teeples*
N. Chase Teeples (TN BPR # 032400)
YEZBAK LAW OFFICES PLLC
2021 Richard Jones Road, Suite 310-A
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

*Counsel for Plaintiffs*